The first case is United States v. Reyes-Arzate. That is 22-3230. My understanding is that everybody's here. We're ready to go. Ms. Smith, you reserve two minutes for rebuttal. May it please the Court, good morning. Robin Smith for Appellant. I'm going to start with the Second Amendment claim. Mr. Reyes-Arzate was convicted of conspiracy to import cocaine into the United States. And there's a standard term of supervised release requiring that he not possess or use a firearm during the term of his supervised release, which is based on 18 U.S.C. 922 G1, which prohibits felons from possessing or using firearms. Both of those restrictions involve the Second Amendment, the right to bear arms. The two questions at issue are whether Reyes-Arzate remains a person who is subject to the Second Amendment. I think that one seems to be a clearer question now that he is based upon case law that has come down from the Supreme Court, for example. So may I ask, if we decide that 922 G1 is constitutional, then would the supervised release condition simply mandate that criminal defendants convicted, punishable by at least one year sentence, not break the law? Is that right, or would it do something different? Would the supervised release... I'm sorry. Would there be any problem with the supervised release condition if we decide that it's constitutional? I don't think so. Okay. And are you aware that we have a number of gun cases that are kind of percolating? Yes. Okay. And you are also aware that we have a queue whereby when one gets decided, others have to be subject to the binding precedent? Yes. Okay. So can you tell me why you think this case might be different than some of the other cases? So why one of our earlier in the queue cases would not control this case? What are some different features or factors that might be relevant for us? Well, our position is that it should not be an across-the-board rule that all felons should not be prohibited, that should be prohibited from possessing... That is in the queue. The question actually cuts against you because most of those cases did not involve supervised release, which might be different. And in many of those cases, at least, it isn't a plain error question because here you didn't ask. So the question that I'm asking is can we decide this case? Should we decide it against you regardless of the queue? Our position is no because it is a question of law that the court can decide de novo rather than by a plain error review. So the court can decide. But why should we? In a case where there is no particular harm to this person, he's going to be deported, so that the issue doesn't really... So where, if we're doing plain error, is the particular harm to your client? Well, it's always possible he would not be deported. It is. So that's one reason. Another reason was, you know, he was not a career criminal by any means. This was his first offense, although a serious one. It was his first offense. He could remain here. He will be released, I believe, in about 2030. So there's plenty of time for him to be rehabilitated. As for all defendants that are subject to this law that violates their Second Amendment right, it should be considered on an individual basis. Rahimi...  Oh, yes. This is Judge Kobranus. This is a standard condition of supervised release, is that right? Yes. So this wasn't a special anything? That is, this comes ordinarily... Oh, if I said special, I misspoke. Excuse me. If I said the word special, I misspoke. I apologize. It was a standard condition. It was a standard condition of supervised release. Was there any discussion of it at sentencing? No, I don't think so. So it would have been presented to the district judge in the normal course as part of the pre-sentence report by the probation officer, correct? Correct. And nobody said anything about it at sentencing? Correct. And Judge Kogan proceeded to sentence him and to impose the standard conditions of supervised release that had been proposed for his consideration, correct? Yes. Okay. Due to the time restriction, I'm going to move on to the other claim regarding... The risk notification, please. Can you talk to me about the role Tropicante plays with respect to your case? The what? I'm sorry? Tropicante, the Tropicante case. Is that regarding the... The case as I read it, that an appeal isn't right before the court. Oh, thank you. Thank you. Regarding the notification of risk position. Yes. Okay. Yes. It seems to me that it contradicts Bowles, which did decide that a notification of risk condition was ripe and this court did decide that the notification of risk condition, although a little different in that now the standard condition was changed so that the probation officer has to go to the court to get approval before requiring the defendant to notify. And in this case, the condition is with court approval. Yes. So you are claiming that even with court approval, it is unconstitutional. It's unconstitutional. Yeah, I'm sorry. But that's the big difference between Bowles and Tropicante, right? That Bowles did it without court approval because it was too vague. But in this case, we said that it was. And so now I need you to please answer Judge Calabresi and my question about why Tropicante doesn't control this case. Because did I'm sorry. Did that court did that case decide that my apologies, but I did not think that there was a case that decided this particular issue where that if only that it wasn't right. Not OK. OK. Because because that panel was incorrect in that Bowles did decide that that the question was right for review, so this court should not follow Tropicante. Even so, you don't think the difference between the court. The difference between being the court approval is not a materially, it is absolutely material. However, as written, it's incredibly vague. What kind of risk are we talking about here? Why can't we wait and see what specific approval the court gives before we decide whether the court's approval is good, bad or indifferent? Because it gives the probation officer too much authority. It puts the defendant in a position of not knowing what potential things he's going to potentially have to notify an individual or an organization about. They can't do anything without court approval. Correct, but it just it does make a difference. It's definitely more limited than Bowles. However, it doesn't go far enough to be clear about what kinds of it doesn't even say risk of violence, risk of of anything. It doesn't even explain a risk of what. So it seems that it is unduly vague, unconstitutionally vague. OK, so thank you so much, Ms. Smith. Thank you. Mr. Pomar. Thank you. May it please the court. My name is Philip Pomar. I represent the United States and I represented the government in the district court below. The district court did not commit any error and especially not plain error in imposing the two standard conditions of supervised release at issue here, which are imposed in nearly every case in the Eastern District of New York, starting with the notification of risk provision. Well, I'm not sure the imposed in every is particularly helpful, but in any event, go ahead about these two. With respect to the notification of risk provision, this court's binding precedent in Traficante, as well as Berkdahl and several other unpublished decisions, those are both published decisions binding on this court. But there are also unpublished decisions in the wake of those cases which have said over and over again that the appellant's challenge is simply not right at this stage of the proceedings. And once the probation officer and then the district court notify the defendant of a particular risk, that that's the time to challenge whether the condition is vague at all. So your position is we need to wait after we have a concrete order in front of us, as opposed to setting forth maybe proactively what the conditions need to be in order to not be vague. Exactly, Your Honor, and that's what the court held in Traficante and Berkdahl and the other cases. Could you address whether we have to stay in the queue of gun cases, or whether this case, because it deals with what is happening in supervised release, and because it is plain error, can be decided apart from the queue? Of course, Your Honor. We think this case can be decided apart from the queue, especially because of the plain error at standard here. This court's 2013 decision in Boggle is still controlling precedent of this court. And then there's a number of decisions, both from McDonald to Heller to Bruin, which say that even some of it, though it's in dicta, but it's obviously persuasive from the Supreme Court, that the Second Amendment right applies only to law-abiding citizens. Okay, but that's the merits argument. What Judge Calabresi is trying to ask is, is there something different about the fact that it's on supervised release? And in many other aspects of life, we have said there can be more impingement of rights of people who are on supervised release. Yes, Your Honor. Sorry, I was addressing his second point first about the plain error standard. Well, the two are not unrelated because if the fact that it is on supervised release makes a difference, then it's harder to say that it is plain error. Yes, Your Honor. So why don't you untangle both of those? Sorry. The person in front of us falls into the law-abiding or not law-abiding is going to be largely decided by some panel, not us. Yes, Your Honor, but I apologize if my point wasn't clear. The point I was trying to make was that because this is a plain error standard and because Judge Kogan was following circuit precedent in 2013, there's Supreme Court language about law-abiding citizens, and to the extent there is even somewhat of a circuit split on the rights of the contours of the Second Amendment, this Court has held that there cannot be plain error when there is a circuit split. So for those reasons, Your Honor, that's why this case is different than those other cases which are before Zerka and Thonney and some others that are before the Q. I don't think we're relying specifically on the supervised release, though of course Your Honor is correct. Why don't you focus on the supervised release? It appears that two of us are more interested in the way this changes the fact pattern. Yes, Your Honor. Your Honor, we did not argue in our brief that because this is a supervised release case, that therefore there's like a different constitutional question. No, you did not argue that, and you're not arguing it before us now? We're not arguing it before you now, Your Honor, that the supervised release changes the contours of the Second Amendment. Okay. Fine. I will note, as Your Honor said earlier, that even if you take this condition away, there is another mandatory condition of supervised release that someone cannot commit a new federal, state, or local crime, and it is still the law in the books that 922G is constitutional. And there's another reason why we weren't focusing on that, because there's so many off-ramps in this case as to why there is no plain error here. Putting aside Boggle and putting aside McDonald and Heller, there's also the fact that, as applied to this defendant, who was convicted of conspiring with an international drug cartel to import massive quantities of cocaine into the United States, he took a significant bribe to leak sensitive United States law enforcement information to further the cartel's activity. It sounds like the government is going all in on the constitutionality of 922G1 and is going all in on the who fits into the law-abiding or not law-abiding argument here, and the supervised release is not something you're putting forward. That's correct, Your Honor, but the focus, I think, in this case, as opposed to his work on Anthony and the cases that come before the queue, is the plain error standard. So you're saying that while you're not taking any position on whether supervised release makes a difference, the fact that it is there means that with the differences in circuits in dealing with that, it cannot be plain error. Exactly, Your Honor. Okay. And unless the court has any other questions, rest on our papers. Thank you, Your Honor. Ms. Smith, you have two minutes. Okay, thank you. The reason that- Well, your job got a little bit easier, right? You're now saying that the supervised release is not a component. Yes, absolutely. With regard to the notification of risk condition, the problem for defendants, if the court approves of the condition where the probation officer has to approach the district court first, is that what- I see this coming up if, let's say, this client wants a job related to law enforcement, and he somehow, magically, or unpredictably, or unlikely, is able to find himself a job potentially in law enforcement, and the probation officer says, oh, you're prone to accepting bribes, so forget it. I'm going to go to the court, and we're going to have you notify, and the court agrees. At that point, by the time this goes through the court system, he's not going to have the ability to get that job anymore, and for other types of jobs as well. So it's already hard enough for a person with a felony record to get a job. It's almost a miracle nowadays. So to put that added burden in a vague situation is unfair. Not that that would be the worst example, that one I gave. Probably wasn't the best example. I just thought of it now. Let's say he was going to work as a clerk in a store, and even those jobs are hard to find, and it was found that he might have a tendency to steal money from the register, and that's less clear. It's less risky, but he would have lost that chance to get a job, and that's a serious consideration for people who are trying to be rehabilitated and move on with their lives. Are there any further questions? Thank you for your argument. We will take the case under advisement.